IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| JOHN DOE I and JANE DOE I, § <br> b/n/f JACQUELINE McCLINTOCK- § <br> BOYLE AND JOE BOYLE, § <br> and on behalf of other students § <br> similarly situated; § <br> § <br> PROPOSED CLASS, PLAINTIFFS, § <br> § <br> v. § <br> ALLEN INDEPENDENT SCHOOL, § <br> MS. AMY GNADT, President; § <br> MS. KELLEY ROWLEY, Vice-President; § <br> MR. DAVID NOLL, Secretary and Board § <br> Members MR. KEVIN CAMERON, § <br> MS. SARAH  MITCHEL, DR. POLLY § <br> MONTGOMERY and MR. § <br> VATSA RAMANTHAN; IN THEIR § <br> OFFICIAL CAPACITIES, § <br> § <br> DEFENDANTS.   § <br> § | CIV. ACTION NO. 4:21-cv-00697 <br><br> CLASS ACTION COMPLAINT FOR <br> VIOLATIONS OF PLAINTIFFS' <br> CONSTITUTIONAL RIGHT TO LIFE |

**SECOND AMENDED EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Plaintiffs John Doe I and Jane Doe I by and through their parents as next friends, and on behalf of the "PROPOSED CLASS (collectively "PLAINTIFFS" herein) and file this their *Second Amended Emergency Motion* to move the Court pursuant to Federal Rule of Civil Procedure 65(a) and Local Rule CV-65 for a *Temporary Restraining Order* ("TRO") and *Preliminary Injunction* enjoining the Allen Independent School Board Defendants from enforcing Executive Order GA-38 to the extent it prevents the Board from implementing a local *Mask Mandate* for students, staff and visitors, and would respectfully show this Court the following:

## I. INTRODUCTION

1. Plaintiffs incorporate the facts described in their *Original Complaint* and repeat the following below-referenced facts in support of their *Emergency Motion for Temporary Restraining Order and Preliminary Injunction.* Plaintiffs are students enrolled in the Allen Independent School District. Last year the District had a *Mask Mandate* that kept students, staff and all their families safe. With the advent of vaccinations and other safety measures the overall national, state-wide and climate was bettered. Mask mandates were withdrawn and we started to return to what we thought was normal. Then the Delta Variant hit and not only are things not close to normal for this Fall Semester but quite obviously are getting worse- especially for students- and especially for students too young to be vaccinated.

2. Governor Abbott Issued Executive Order GA-38 (attached hereto as Exhibit A and incorporated herein as if fully set forth) preventing the Allen ISD from affixing a *Mask Mandate* like last year. Some Districts have decided not to comply with that directive but the Allen ISD has. Plaintiffs and members of the PROPOSED CLASS and more importantly, medical professionals both far and near believe a *Mask Mandate* is crucial. Simply put Plaintiffs "have certain inalienable Rights, that among these are "Life, Liberty and the pursuit of Happiness" where "life-first" is underscored, not only in our common knowledge but in the *Due Process Clause* of the 14th Amendment to the U.S. Constitution, protected by 42 U.S.C. §1983. In summary, however well intentioned the Governor's Executive Order may be, and the reliance of the Board on its directives, it falls second, and a far one at that, to the "Life Interest" of Plaintiffs and the PROPOSED CLASS.

## II. FACTS ABOUT THE VIRUS

3. Plaintiffs first especially re-urge paragraphs 3, 4, 25- 36 and incorporate by reference everything therein related to "XI. THE CURRENT HEALTH CRISIS" with particular focus on commentary about the history of the pandemic; including its affect upon children in general, and with the onset of the Delta Variant its worsening affect upon children in schools nationally and in Texas. Accordingly, the PROPOSED CLASS asks this Court to take *Judicial Notice*, pursuant to Fed. R. E. 201 of the litigation filed by Disability Rights Texas ("DRTX") in Civil Action No. 1:21-cv-00717-LY, especially DE#1, ¶1-8, 29-51 and DE# 7, p. 7-14 /26 and the physician declarations incorporated into and relied upon in that cause and now this cause regarding what is termed a *Mask Mandate*. (*See* Exh. D, Declaration of Dr. Dona Kim Murphey, Neurologist and Neuroscientist and Director of Scientific Affairs of an EEG Diagnostics company and Exh. D, Declaration of Dr. Alexander Yudovich, Board Certified Pediatrician and Fellow of the AAP Pediatrics ("AAP").

4. They further ask the Court to take *Judicial Notice* of related healthcare directives from the Center for Disease Control, the American Academy of Pediatricians and other citations therein to well-accepted sources of news, known and common to all about the viruse and Delta Variant.

5. They additionally ask the Court to take *Judicial Notice* of the Governor's Executive Orders (#38-39) and directives from the Texas Education Agency, Collin County, Texas and Cooks Children's Health Care (*See* Exh. B incorporated herein as if fully set forth) where cited herein.  Taken together these writing evidence a medical emergency because of the Delta Variant of the COVID19 Pandemic and its disproportionate effect upon students, particularly those who are unvaccinated. Specifically, "schools without mitigation strategies will be an

    epidemiological disaster and a lesson in statistics." (Ex. E at ¶1, 2, 4, 26). Until vaccines are readily available for children under 12 years of age. (Ex. D ¶ 16) many face imminent threat of harmful and potentially life-altering consequences if exposed to an environment bereft of universal masking. (Exh. D, at ¶ 19; Ex. E at ¶18). Students or family members with a compromised immune responses or impaired respiratory or neurological function have heightened reasons to be anxious about being in school without a mask mandate in place. (Ex. D at ¶19).1

6.     The reports in Texas are already troubling. At least four Texas school districts have already closed campuses due to COVID-19 outbreaks"2 including a campus in Waskom ISD. The Gorman ISD closed for at least a week.3 Some schools have shut down rather then reject the Governor's Guidance. Others have rejected it outright. Here in the Allen ISD a football coach died. Approximately two hundred (200) physicians at the Cooks Children's Health Care System recently sent an *Open Letter* to "The Leadership at North Texas Regional Schools" (Exh. E, incorporated herein as if fully set forth) and wrote that School Districts in their catchment area implement a mask mandate policy for all the reasons noted above.

7.     A number of parents of students at the District are also medical or nursing professionals. Therissa Anne Grefsrud (Exh. F, F-1, incorporated herein as if fully set forth) has worked in healthcare for 19 years and has been an RN for 12 years. In 2019 she became Board

---

[1]. Centers for Disease Control, COVID-19: People with Certain Medical Conditions, May 13, 2021, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.

[2]. Juan A. Lozano, Virus outbreaks temporarily close 4 Texas school districts, AP News (Aug. 18, 2021), https://apnews.com/article/health-texas-education-coronavirus-pandemic-8e78f68e2c0f118a3cc0c7. See also Exs. S–V.

[3]. Id.

        Certified in Infection Control and Epidemiology having worked in this field for the past 5 years.  She is well-experienced in the area and echoes the same personal and professional concerns as those professionals noted above.  Importantly, she and her children have actually become ill because of the District's propensity to discard expert medical advice.

8.    Jane Doe, RN (Exh. G, , G-1, Declaration of Jane Doe, RN incorporated herein as if fully set forth) is employed with the Allen Independent School District. Her testimony is most revealing and only including a part of it in this writing is a disservice to its entirety.  That being said, she has been a school nurse in Allen for multiple years with extensive prior nursing experience She notes last year was tough year but with the backing of the district, health department, state and federal governments, it worked to keep students and staff safe.  They had a the mask mandate, distanced seating throughout elementary schools and in the secondary level as able, stringent isolation and quarantine guidelines, as well as virtual learning opportunities.  Accordingly transmissions were low but then came the Delta Variant this year.  Doe reports at her campus and she believes across the District, the transmission of the illness has reached the same numbers for the entire last year. That is because, and among things, children can come to school sick with "no questions asked."  There is no contact tracing occurring.  Quarantining is sporadic and uneven across campuses. Simple steps that could mitigate spread include all student desks in rows and distancing as much as possible, not mixing specials with other classes, and one of the biggest, allowing adequate spacing at lunch.  She notes that when children are kept home they are penalized.  Doe reports at several classes at multiple campuses the District is educating a few children while the rest have no access to learn from home during illness. They are at a disadvantage because

when they get sick, it will take even more time to get them caught up, if they can ever get caught up. What is a particular problematic is the failure to provide credible and timely communications to parents about the current, day-to-day transmission of the disease. She is particularly concerned because parents don't have the information to make informed day to decisions. This is especially so for students in elementary schools who have no protection from COVID, because vaccines are not available for anyone under 12. She is personally concerned because "nurses have been chastised for promoting healthy practices and guidance regarding COVID to our school communities. She asks the Court:

> "to take action steps now to slow the spread and be consistent across the district. Every student deserves to have access to the excellent education that Allen can provide, but they can't receive an education if they are sick or dead. We are only asking for temporary changes that have the potential to keep our 21,000 students and 2,700 staff members safe...."

## VIII. IRREPARABLE AND IMMEDIATE HARMS

9. The parents of Plaintiffs and the PROPOSED CLASS herein, want the Board to implement and enforce a mask mandate to stop the spread of the virus. In fact, many children as well as teachers have to be quarantined because they already caught the virus. Parents are anxious because nobody knows what are the long-term effects are scared to send their children to school. (*See* Exh. H, Declaration of Christina Cabral; Exh. I, Declaration of Lynde Johnson; Exh. J, Declaration of Stephanie Jones; Exh. K, Declaration of Sarak K. Vanmersbergen; Exh. L, Declaration of Christina Young; Exh. M, Declaration of Kristen Gardiner; Exh. N, Declaration of Mahrool Howell, Exh. O, Declaration of Elizabeth Todd, Exh. P, P-1, Declaration of Jacqueline McClintock-Boylan, Exh. Q, Declaration Harp, all incorporated herein as if fully set forth).

10. Further, they further want the District to be mindful of the needs of children in the elementary schools who cannot yet receive a vaccination and for a families with a members who is particularly susceptible. They also want the mask mandate because some children are scared they will catch the virus at school and spread it to a loved one who is fragile, will get very sick or even worse die. Children are confused because last year everyone wore masks and this year, with the virus worse, they are not. They want to the District adopt other health and safety measures like social distancing, especially at lunch. And stop large rallies.

11. They want clear, concise and credible information about the spread of the virus in a timely manner. They want the District to provide such information not only to the School Community but to the Texas Education Agency, Collin County and the Texas Department of Health Services. They are concerned their children are being punished if kept home from school by their parents. For instance, the children are being threatened with, or actually removed from school, dropped from numerous school programs like a University Interscholastic League ("UIL") program, specialty class program at the school, including for instance the Talented and Gifted Program, the AIM Program, the GATE Program or STEAM (Science, Technology, Engineering and Math and in some cases even sent to the truancy court. People who removed their children from school or forced to leave a program want to come back without retribution. They want to be able to present a physician's note to be an excused absence and receive virtual education services like last year.

### IX.  STANDARD OF REVIEW

12. The standard for issuing a TRO is the same as for issuing a preliminary injunction, *see* <u>Clark v. Prichard</u>, 812 F.2d 991, 993 (5th Cir. 1987) which is "an extraordinary remedy" that may

be awarded only upon "a clear showing the plaintiff is entitled to such relief." Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 22, 129 S. Ct. 365, 376, 172 L. Ed. 2d 249 (2008). "[S]uch extraordinary relief would issue only where (1) there is a substantial likelihood the movant will prevail on the merits; (2) there is a substantial threat irreparable harm will result if the injunction is not granted; (3) the threatened injury outweighs the threatened harm to the defendant; and (4) granting of the preliminary injunction will not disserve the public." Clark at 993. "The party seeking such relief must satisfy a cumulative burden of proving each of the elements enumerated but "none of the four prerequisites has a fixed quantitative value." State of Tex. v. Seatrain Int'l, S. A., 518 F.2d 175, 180 (5th Cir. 1975). "Rather, a sliding scale is utilized, taking into account the intensity of each in a given calculus" *citing* Siff v. State Democratic Exec. Comm., 500 F.2d 1307 (5th Cir. 1974).  At this preliminary stage, procedures are much less formal and a court may rely on otherwise inadmissible evidence. Sierra Club, Lone Star Ch. v. F.D.I.C., 992 F.2d 545, 551 (5th Cir. 1993).

## X.   ARGUMENT AND AUTHORITIES

13.   Plaintiffs incorporate by reference as if fully set forth herein the above-noted paragraphs and each paragraph below likewise incorporates by reference, as if fully set forth therein, the one above it.

A.   STRONG LIKELIHOOD OF SUCCESS ON THE MERITS

14.   A TRO is appropriate only where the plaintiff shows that there is a substantial likelihood it will prevail on the merits. Clark at 993. Indeed, the Fifth Circuit has cautioned that "it is inequitable to temporarily enjoin a party from undertaking activity which he has a clear right to pursue." Seatrain at 180.  This section of the motion for a TRO singularly addresses the

*Mask Mandate*. The number of derivative issues are subsumed and incorporated by reference into this section. As noted in their *Original Complaint* Plaintiffs claim that their constitutional right to Life, and by extension health, pursuant to the *Due Process Clause* of the 14th Amendment to the United States Constitution as protected by 42 U.S.C. §1983, is well-founded and likely to lead to success.

1. The Constitutional Claim Based Upon Life Supercedes The District's Current Policy

15. Plaintiffs are likely to succeed on the merits of their claim based on federal preemption law. The *Supremacy Clause* of the United States Constitution renders federal law the "supreme Law of the Land." U.S. CONST. art. VI, cl. 2. The doctrine of federal preemption that arises out of the Supremacy Clause requires that "any state law, however clearly within a State's acknowledged power, which interferes with or is contrary to federal law, must yield." Felder v. Casey, 487 U.S. 131, 138 (1988) *quoting* Free v. Bland, 369 U.S. 663, 666, 82 S. Ct. 1089, 8 L. Ed.2d 180 (1962). State law is preempted when, among other things, it "stands as an obstacle o the accomplishment and execution of the full purposes and objectives of Congress." Pac. Gas & Elec. Co. v. State Energy Res. Cons. & Dev. Comm'n, 461 U.S. 190, 204 (1983). Hear we are dealing with a Governor's Executive Order which the District relies upon for its failure to follow national, state, local and professional medical guidelines. It has not been ratified or adopted by the Legislature. It has not gone through any rule-making process. Surely the language about *Life* in Declaration of Independence secured as fundamental in the Due Process Clause of the 14th Amendment supercedes the Governor's Order, at least for the purposes of this TRO and this element.

16. In addition and in the alternative, the narrative of the Governor trumpets the purported

constitutional right of a parents to decide for themselves whether or not to send their child to school without a mask. While surely the rights of families relative to their child's public school experience are constitutionally protected, Meyer v. Nebraska, 262 U.S. 390 (1923), it is not specifically noted in the plain language or text of the Constitution, while Plaintiffs protected interested in "Life" is. *See* Dissent of Justice Black in Dennis v. United States, 341 U.S. 494, 580 (1951)[discussing the strict reading of the text in the Constitution]. The right of a family to end their child to school without a mask is second to Plaintiffs and the PROPOSED CLASS' interest in "Life" and by extension their health pursuant to what is termed the *Preferred Position Doctrine*. United States v. Carolene Products, 304 U.S. 144, 155, fn. 4; 58 S. Ct 778; 82 L. Ed. 1234 (1938);

17. While this *Doctrine* was first enunciated in a 1st Amendment case, the application and extension to this cause rings true. The Court wrote:

"... The *preferred position* of freedom of speech in a society that cherishes liberty for all does not require legislators to be insensible to claims by citizens to comfort and convenience. To enforce freedom of speech in disregard of the rights of others would be harsh and arbitrary in itself." Kovacs v. Cooper, 336 U.S. 77, 88; 69 S. Ct. 448; 93 L. Ed. 513 (1949)."

In the instant case, we can apply a similar reading and outcome by changing the words slightly, for instance that "the *preferred position of life* requires enforcement and to anything less would be harsh and arbitrary." Moreover, while issues of a vaccine and bodily intrusion would surely create a different balancing test if before us, the wearing of a mask temporarily for a few hours a day, does not impinge into a bodily intrusion. While a parent may have a right to send their child to school without a mask, the government has a right to ascribe other conduct that comports with relevant healthcare guidelines, Klassen v. Trustees of Indiana

University, 2021 U.S. App. LEXIS 22785 (7th Cir., August 2, 2021) *appealed denied* by Justice Barret, 2021 U.S. LEXIS 3677, August 12, 2021) as Plaintiffs argue herein. In any case, to the extent the rights of others is a concern of the Court it is best left for briefing at trial and not for the TRO. Plaintiffs meet this element.

  2.  Plaintiffs Equal Protection Claim Supercedes The District's Current Mask Policy

18. In addition and in the alternative, Plaintiffs have enunciated an *Equal Protection* violations also pursuant to the 14th Amendment to the United States Constitution. Here Plaintiffs posit that a sub-class, students who are too young to receive a vaccination a disparately effected by the School District's current *No Mask Policy*. While public education is not a fundamental right under the Constitution, San Antonio Independent School District v. Rodriguez, 411 U.S. 1 (1973), the Equal Protection Clause of the 14th Amendment to the United States Constitution notes that a public school system is developed by the state, it may not deny a student "equal access" to district programs. Phyler v. Doe, 457 U.S. 202 (1982). In the instant case, students who cannot yet receive a vacinine are being denied equal access to district educational programs. *See* Vickey M. & Darin M. a/n/f A.J.M. Northeaster Educational Intermediate Unit, et al., 3:05-cv-1898 [53 IDELR 74] (M.D. Pa., September 16, 2009)[student has constitutional right to "safe conditions"]. Plaintiffs meet this element.

B. IRREPARABLE HARM

19. Plaintiffs must show "irreparable injury is likely in the absence of an injunction." Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 22 (2008). A harm need not be inevitable or already happened to be irreparable; rather, imminent harm also merits an injunction. *See* Helling v. McKinney, 509 U.S. 25, 33 (1993). Plaintiffs are likely to suffer probable,

irreparable injury if the Court does not grant the *Mask Mandate* portion of the request for a *Temporary Restraining Order*. Without an *Order* to the School Board of the Allen ISD implement a mask policy, Plaintiffs and other members of the PROPOSED CALLS will certainly be exposed to an increased risk of infection, hospitalization, or death because of COVID-19 and its Delta Variant. In a related vein, absent such an *Order* many children will be forced to stay home and be denied the benefits of an in-person public education. Others have left the District and more will likely follow. Some Plaintiffs are particularly vulnerable because they remain ineligible to receive the vaccine because of their age. It is inarguable exposure to a life-threatening virus, or which may cause lifelong complications, is an irreparable harm incapable of being adequately remedied at law with money damages. *See Parks v. Dunlop*, 517 F.2d 785, 787 (5th Cir. 1975); Peregrino Guevara v. Witte, 2020 WL 6940814, at *8 (W.D. La. Nov. 17, 2020)[noting that "[i]t is difficult to dispute that an elevated risk of contracting COVID-19 poses a threat of irreparable harm."]. The Declarations from parents address a litany of harms that support this element.

C. NO HARDSHIP TO DEFENDANTS AND A TRO WILL NOT DISSERVE THE PUBLIC

20. There is no observable hardship to Board Members, students or staff in being forced to adopt a *Mask Policy,* especially temporarily as everyone wore face masks last year. Maybe a Board Member would receive a complaint because a constituent who is opposed to mask mandates would speak out- but that's not enough. Indeed, given that the Governor's Order is preempted by the Constitution for the reasons set forth above, enjoining its enforcement and requiring a *Mask Mandate* will not subject Defendants to any undue hardship or penalty, because the temporary restraining order and preliminary injunction will require only

Defendants' compliance with the Constitution law under the Supremacy Clause. *See* Greyhound Lines, Inc. v. City of New Orleans ex rel. Dep't of Pub. Utils., 29 F. Supp. 2d 339 (E.D. La. 1998).  Granting a temporary restraining order and preliminary injunction will not only protect Plaintiffs but all students and staff.  The Delta Variant has caused a spike in cases among people of all ages, but particularly children, for reasons that are not yet fully understood. It is in the public's best interest for the Allen School Board to be ordered to implement and enforce a *Mask Mandate* until such time all students at the District, including and especially elementary school students have access to a vaccine.

D.     IRREPARABLE HARM IF A TRO IS NOT ENTERED

21. As noted above irreparable harm has already occurred.  Children, family members and Staff are getting sick and a football coach died.  Children are missing school.  Nursing Staff are confronted with worsening major medical ethical issues. Law abiding parents and child are being sent to Court.  Students especially those who can't be vaccinated are at high risk and exposure will lead to a heightened risk of infection, hospitalization or death unless the District's is compelled to adopt and enforce the most basic safety precaution, a mask. Unless the Court enters a *TRO* Plaintiffs have to choose between their safety and receiving an in-person education.  Accordingly, Plaintiffs respectfully request the Court enter a *TRO* and Permanent Injunction requiring the Board adopt and enforce a *Mask Mandate,* and other items reasonably related thereto, until such time that the Court rules otherwise.

E.     THE STATUS QUO WAS SET IN THE SPRING 2021 SEMESTER

22. The general rule is a TRO can only to "preserve, for a very brief time, the status quo, so as to avoid irreparable injury pending a hearing on the issuance of a preliminary injunction."

Norman Bridge Drug Co. v. Banner, 529 F.2d 822, 829 (5th Cir. 1976). Nevertheless and as it is in this case, "[i]f the currently existing status quo itself is causing one of the parties irreparable injury, it is necessary to alter the situation so as to prevent the injury, . . . by returning to the last uncontested status quo between the parties." Canal Auth. of State of Fla. v. Callaway, 489 F.2d 567, 576 (5th Cir. 1974); *see also* United States v. FDIC, 881 F.2d 207, 210 (5th Cir. 1989) ["... The district court has the equitable power to return the parties to their last uncontested status."]. Accordingly Plaintiffs request the Court find the "last uncontested status quo" was the School Board's *Mask Policy* for the Spring 2021 semester.

## XI.  REMEDIES REQUESTED

23. The Plaintiffs request that to avoid irreprarable harm the Court GRANT Plaintiffs *Motion For A Temporary Restraining Order* and *Preliminary Injunction;* that the status quo is District's *Mask Order* for the Spring 2021 Semester; that Defendants, attorneys and other persons who are in active concert or participation with Defendants are ordered to reimplement the District's *Mask Order* that was active for the Spring 2021 semester.

24. In addition and also reasonably related to the above, the Allen Independent School District shall follow and execute all the following:

- *Public Health Guidance* (Exh. A in Plaintiffs *Motion*) promulgated by the TEA on September 2, 2021 and any modification thereafter inconsistent with, this TRO;  all provisions set forth by the Collin County Department of Health (see https://www.collincountytx.gov/) regarding the reporting of COVID19 Pandemic incidents;  that all reporting requirements with any federal, state, local entity be copied to the Court and Plaintiffs Counsel; that the School District file a report of absenteeism since the beginning of the school year with the Court and Plaintiffs Counsel; that the Director Of Nursing Services certify and sign off on all to file such reports and file daily reports on the District's Dashboard by 5:00pm each day regarding the current number of active cases among students and staff and absenteeism;

- that the District suspend sending the names of or threatening to send the names of students who do not attend school because their parents are afraid their child will succumb to the COVID19 Pandemic to the local justice system for allegations of truancy; that District to send a letter to the local justice system that all previously filed complaints of truancy are withdrawn;  that the District modify the record of any student where a truancy complaint was filed with the local justice system to reflect such withdrawal; that the District suspend the removal of, or threatening the removal of students from school itself, or any class, University Interscholastic League ("UIL") program,

specialty class program at the school, including but not limited to the Talented and Gifted Program, the AIM Program, the GATE Program or STEAM (Science, Technology, Engineering and Math) Programs because their parents are afraid their child will succumb to the COVID19 Pandemic; that the District mandate and give notice to the parents of any child so affected by any action taken, in the paragraph above is permitted to return to such program;

- that the District shall permit a parent to produce a note from a physician stating their child may stay home during the pendency of COVID19 Pandemic; that the District permit a student who produces such a physician's note be marked as "present" if they check in the School's Attendance Officer on a daily basis; that the provide a Virtual Education Services to a student who is home ill or produces such a physician's note; that the Court appoints a Magistrate Judge to help address all the above noted issues in as non-adversarial manner as possible to save the Court's valuable time for the main issues giving rise to this proceeding; and that the required bond or security to be posted by Plaintiffs under rule 65(c) of the Federal Rules of Civil Procedure be waived.

## XII . CONCLUSION AND PRAYER

25. For the reasons stated herein, Plaintiffs request the Court uses its traditional power to advance equity, *see* Sierra Club Lone Star Chapter, et al. v. Federal deposit Insurance Company, 992 F.2d 545 (5th Cir. 1993) enter a *Temporary Restraining Order* in the form attached hereto requiring the District to immediately implement a "Mask Mandate" and related issues reasonably related to the TRO and fair litigation of this cause, and later or at the same time a *Preliminary Injunction* pursuant to Federal Rule of Civil Procedure 65(a).

**WHEREFORE, PREMISES CONSIDERED**, DOE's and the PROPOSED CLASS, Plaintiffs herein, pray in the manner and particulars noted above, as reflected in the PROPOSED ORDER attached and filed herein, and for such other relief as this Court may deem just and proper, whether at law or at equity or as to both.

Respectfully submitted,

*/s/ Martin J. Cirkiel*
Mr. Martin J. Cirkiel, Esq.
Texas Bar No. 00783829
Cirkiel & Associates, P.C.
1901 E. Palm Valley Blvd.

Round Rock, Texas 78664
(512) 244-6658 [Telephone]
(512) 244-6014 [Facsimile]
marty@cikrielaw.com [Email]

## CERTIFICATE OF SERVICE

I certify that on September 29, 2021 a true and correct copy of the foregoing document was served via the court's CM/ECF System to all counsel of record, with an original unredacted pleading sent via email to :


Mr. Lucas Henry, Attorney
lhenry@abernathy-law.com [Email]
Ms. Mari McGowan, Attorney
mmcgowan@abernathy-law.com [Email]
Law Firm of  ABERNATHY, ROEDER, BOYD & HULLETT, P.C.
1700 Redbud Blvd., Suite 300
 McKinney, Texas 75070
(214) 544-4000 [Telephone]
(214) 544-4040 [Facsimile]
ATTORNEYS FOR DEFENDANT ALLEN INDEPENDENT SCHOOL DISTRICT
AND MEMBERS OF THE SCHOOL BOARD OF DIRECTORS

    /s/ Martin J. Cirkiel
    Martin J. Cirkiel